## Smith v. A. De O. Rossiter & Sons Company et al., Appellants.

Argued September 25, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Louis Wagner,* with him *Richard A. Smith,* for appellants.

*George A. Butler,* for appellee.

OPINION BY RHODES, J., October 24, 1945:

Claimant presented a petition for compensation as the widow of a deceased employee of defendant. The referee awarded compensation, having concluded that deceased sustained an accident in the course of his employment, as the result of which he died. The Workmen's Compensation Board, on appeal by defendant and its insurance carrier, reversed the referee and dismissed the claim petition. In doing so the board vacated the 6th and 11th findings of fact and the second conclusion of law of the referee,[1] and substituted therefore the following:

"Sixth: That nothing of an accidental nature occurred while the claimant's decedent was assisting his employer in pushing a car from the plant garage on the morning of February 15, 1943, and that there was nothing unusual about the duty being performed by the claimant's decedent at that time.

---

[1] "6. That the aforesaid incident [pushing automobile] constitutes an accident within the meaning of the provisions of the Pennsylvania Workmen's Compensation Act. . . .

"11. That the vascular changes above mentioned were caused by the extreme cold weather of February 15, 1943, and the severe strain of removing the frozen ground with a pick and pushing the automobile out of the defendant's garage."

Second: "The Referee further concludes as a matter of law that since claimant's decedent sustained an accident while in the course of his employment with the defendant as a result of which he died, his dependent widow is entitled to compensation, in accordance with the above found facts and the provisions of the Pennsylvania Workmen's Compensation Act."

"Eleventh: That the claimant's decedent died of natural causes and not by reason of accidental injury in the course of his employment."

"Second: Since the claimant's decedent did not die by reason of accidental injury in the course of his employment the claimant is not entitled to compensation."

The court of common pleas, on claimant's appeal from the board's disallowance of compensation, reversed the board, entered judgment for claimant, and returned the record to the board for the purpose of computing the amount due.

Deceased reported for work on the morning of February 15, 1943, about 7:30 o'clock, and performed his customary tasks. He did general work in the factory where he had been employed for 25 years. He was engaged in the manufacture of mailing envelopes. About 10 o'clock in the morning Frank F. Rossiter, his employer, requested deceased to help push an automobile from the garage. The temperature was about zero. In order that the garage doors might be opened more readily, deceased used a pick to chip away the swollen ground. Both men pushed the machine over the threshold after which it went of its own momentum on a slight grade. There was nothing unusual in this act on the part of deceased, and there was no more difficulty than usual in pushing the car on the morning in question; he had done this alone many times before. Deceased returned to the plant and warmed his hands over a steam pipe. He had made no complaint and showed no signs of effort, distress, or discomfort during the performance of these tasks. About 15 minutes later, while he was examining the printing press before it started, he partly fainted. Mr. Rossiter lifted him, and he quickly revived. Deceased maintained that he felt all right and continued with his work. He continued with his usual duties until about two o'clock in the afternoon, when he suddenly collapsed and died immediately.

Claimant in her petition had asserted that the accident occurred while deceased was leaning down into a

bin, that there was a strain from reaching, and that the cause of death was a bursted blood vessel. As to the evidence presented at the hearing, the board stated: "The claimant rested her whole case on evidence tending to show prior good health and fatal injury by reason of unusual exertion and extreme cold."

Claimant now relates the collapse of deceased to the removal of the ice at the garage, the pushing of the automobile over the threshold of the garage, and the return of the deceased to the warmth of the factory building.

Dr. Garth W. Boericke,[2] an expert who had made no physical examination of deceased, and who was without the benefit of a post mortem examination, to a hypothetical question, testified that, in his opinion, the "circumstances [were] calculated in [his] opinion to cause a great vascular stress and strain which might well result in the type of accident testified to by the undertaker."

The undertaker had testified that he had difficulty in getting circulation of the embalming fluid in deceased's face, and that he had to open an artery in the back of the neck. To a question as to what caused this lack of continuity of circulation, objected to by defendants' counsel, he replied: "The reason for the lack of circulation was because there was a rupture in the system."

Dr. Boericke, continuing with his testimony, said that in his opinion the cause of deceased's death was "probably arterial rupture, cardiac, or aneurism. It must have been a large artery, a rather large artery."

Dr. Boericke further testified: "Q. Practically everything you do, in a sense, produces a vascular strain, doesn't it? A. Quite right, but there were two circumstances here—the cold weather and the exercise, particularly the cold weather. Q. But we are in agreement so far as the words 'vascular strain' may be used that

---

[2] This was the only medical witness presented to establish the cause of deceased's death.

any muscular effort at all in a sense produces some vascular strain? A. I would prefer to say as a vascular change, not a strain. If you are healthy, it is a change. If you have any impairment, it might amount to a stress or a strain. . . . Q. Well, do I gather from that answer that the real damage to the deceased in this case was the fact that he went from a very cold place to a very warm place? A. I rather feel that that is an important element in the case. Q. Well, that would have nothing to do with the fact that he was doing some work in the cold weather, would it, that part alone? A. Yes, it would, because the cold weather part caused the original contraction and then conditioned the vascular system for its reaction in the hot room. Q. Would you say that any effort by him outside in the cold and then going from the cold to the warm would be followed by the same consequences? A. Yes, sir. Q. You say you read all this testimony. Did you read that part where his employer said that previously the deceased had pushed this car out on days as cold as this without any assistance from anyone? A. I believe I recall that, yes. Q. How do you explain the fact that no ill consequences followed the effort of the deceased when he would move the car alone, and the fact that you claim now when he moved the car with the assistance of his employer that it had these ill consequences? A. I don't explain it. . . . Q. . . . So you think, then, that his age had something to do with the fact that he was more susceptible to this reaction? A. Well, it's a rather broad statement but you understand there has to be a first time. You can stand insults to your arteries a number of times but finally they break, and there is no way of anticipating that that I know of. The same condition may cause it one time and not cause it another. Q. That is because the heart gets weaker and is unable to withstand the impact it did formerly? A. I would say so, yes, sir. Q. And that could be a reasonable explanation in this case? A. Certainly."

It is true that there is no testimony that deceased was suffering from any specific heart disease or arterial

degeneration. There was testimony, however, that deceased had physical disturbances which the board apparently considered significant, at least to the extent of making questionable any assertion of good health.

Disability overtaking an employee at work is not compensable unless it is the result of an accident; and an accident cannot be inferred merely from physical collapse. *Good v. Pennsylvania Department of Property & Supplies et al.*, 346 Pa. 151, 154, 30 A. 2d 434; *Evancik v. Coal Mining Co. of Graceton, Inc., et al.*, 150 Pa. Superior Ct. 27, 31, 27 A. 2d 767. The burden was on claimant to prove all the elements of her case to the satisfaction of the board—an accident in the course of deceased's employment, and a causal relationship between the accident and his death. *Bowers v. Schell's Bakery et al.*, 152 Pa. Superior Ct. 112, 115, 31 A. 2d 442; *Mancuso v. Mancuso et al.*, 150 Pa. Superior Ct. 22, 24, 27 A. 2d 779; *Apker v. Crown Can Co. et al.*, 150 Pa. Superior Ct. 302, 305, 28 A. 2d 551. The board found, in effect, that there was no accident due to overexertion or strain, and that deceased did not die as the result of any accidental injury, but rather from natural causes. These ultimate findings followed the underlying findings, and support the conclusion that deceased did not die by reason of an injury by an accident in the course of his employment. See *Frederick v. Berwind-White Coal Mining Co. et al.*, 115 Pa. Superior Ct. 581, 585, 176 A. 60; *Corrento v. Ventresca et al.*, 144 Pa. Superior Ct. 358, 363, 19 A. 2d 746. It was for the board to determine the cause of deceased's collapse and death, and find the facts in accordance therewith. The credibility of the expert witness and the weight to be attached to his testimony were matters exclusively for the board. The board was unwilling to base an award upon the hypothetical pathology of the expert. If the opinion of Dr. Boericke were sufficient to support an award, it was not accepted by the board. We think justification is found in the circumstances disclosed by the evidence and from parts of the testimony of the expert himself.

There was an absence of proof of overexertion or unusual exertion on the part of deceased, and there was no evidence of strain or stress sustained by him in the course of his work. Dr. Boericke was of the opinion that deceased's vascular system was subjected to a stress and strain as a result of the circumstances on the morning in question, which, however, disclose nothing unusual or abnormal. He assumed in this connection that deceased went from a cold place to a hot room with a resulting vascular contraction and reaction. The temperature outside was about zero that morning, and inside the room temperature was about 16 degrees at 4 a.m. No later inside temperature is shown by the record. But it is significant that Dr. Boericke indicated that heat and cold produce a vascular change if the individual is healthy, but that if the individual has any physical impairment to the circulatory system it might amount to a stress or strain with a resulting vascular accident.

We think the medical testimony can justifiably be described as inconclusive. The evidence as a whole indicated to the board that the essential elements of a compensable accident were lacking. From the totality of circumstances, an absence of an injury by accident was a natural, if not inevitable, ultimate finding and conclusion. There was no proof of a prior fortuitous happening of which deceased's collapse and death were the natural consequence; there was evidence that he had manifested symptoms of ill health. The board therefore felt that Dr. Boericke's opinion lost such force as it might have had otherwise. In taking this view of all the evidence, the board committed no reversible error, and the court below was without power to weigh the evidence, come to a different conclusion, and enter judgment for claimant. Cf. *Kline v. Kiehl et al.*, 157 Pa. Superior Ct. 392, 43 A. 2d 616; *Powell v. Hills Garage et al.*, 150 Pa. Superior Ct. 17, 27 A. 2d 773.

Judgment is reversed, and entered for defendants.